MARILYN ELIAS, administratrix,[1] *vs.* EUGENIO L. SURAN.

No. 91-P-1045.

Essex. March 24, 1993. - July 22, 1993.

Present: ARMSTRONG, BROWN & PORADA, JJ.

*Negligence*, Medical malpractice. *Witness*, Expert. *Nurse*. *Evidence*, Custom and usage, Corroborative evidence.

In a medical malpractice action, testimony of a nurse regarding a hospital's routine practice for administering certain medication to patients about to undergo an angiogram, was properly admitted in the judge's discretion, and the nurse was not an expert witness whose testimony was subject to the notice and discovery provisions of Mass.R.Civ.P. 26(b)(4)(A) or Mass.R.Civ.P. 26(e)(1)(B). [10-11]

Evidence at the trial of a medical malpractice case regarding a hospital's routine practice in the administration of certain medication to patients about to undergo an angiogram was relevant to corroborate the defendant doctor's testimony as to the procedures he followed in a particular instance and there was no merit to a claim of error in its admission where the plaintiff did not request a limiting instruction [11-13] ; moreover, error, if any, was harmless where the evidence was merely cumulative, its effect insignificant and the judge's instructions on the issue adequate and correct [13-14].

CIVIL ACTION commenced in the Superior Court Department on March 9, 1984.

The case was tried before *Charles M. Grabau*, J.

*Leonard Glazer* (*Frank E. Glazer* with him) for the plaintiff.

*M. Catherine Huddleson* (*James S. Hamrock, Jr.*, with her) for the defendant.

PORADA, J. The only issue presented on appeal from a Superior Court judgment for the defendant in a medical malpractice action is whether the trial judge erred by admitting

---

[1] Of the estate of William S. Elias; Marilyn Elias is also a party individually.

in evidence, over the plaintiff's objection, the testimony of a nurse at Massachusetts General Hospital (MGH) about the routine practice in 1981 at MGH for administering morphine sulfate to patients undergoing angiograms. The plaintiff argues that this testimony was inadmissible on two grounds: (1) the lack of notice of the subject matter of the witness's expert testimony prior to the deadline for supplementing answers to interrogatories in violation of Mass.R.Civ.P. 26(b)(4)(A), 365 Mass. 774 (1974) and Mass.R.Civ.P. 26(e)(1)(B), 365 Mass. 776 (1974); and (2) it conveyed an erroneous statement of the standard of care required of physicians as set forth in *Brune* v. *Belinkoff*, 354 Mass. 102 (1968). We conclude that the trial judge did not abuse his discretion in permitting the nurse to testify and that the admission of her testimony did not constitute error because the evidence was admitted not as a statement of the standard of care, but on the issue of the dosage of morphine sulfate administered to the plaintiff's decedent. We affirm the judgment.

We summarize the pertinent evidence presented to the jury. On April 11, 1981, the plaintiff's decedent, a fifty-nine year old surgeon, began experiencing symptoms of dizziness, sweating, nausea, and weakness on his right side. He entered Bon Secours Hospital in Methuen where a diagnosis of "transient ischemic attack (impending stroke), related to left carotid artery disease" was made. He requested a transfer to MGH, where he was examined in the emergency room by a neurologist and a neurosurgeon who recommended that an angiogram, a procedure in which a dye is injected into an artery and an X-ray is taken to reveal any blockage in the artery, be performed.

The defendant, a neuroradiologist, was on duty and was assigned the task of performing the angiogram. Before doing so, he ordered that three milligrams of morphine sulfate be given to the defendant to relax him. The emergency room record for the plaintiff's decedent contained the notation of "MS 5 mg IV" (morphine sulfate five milligrams intravenously). The defendant denied that this notation appeared on

the emergency room record at the time it was seen by him and denied that the plaintiff's decedent had previously been given five milligrams of morphine sulfate in the emergency room. The defendant explained that the procedure at MGH was to premedicate patients receiving nonemergency scheduled angiograms with five milligrams of morphine intramuscularly before they were brought to the neuroradiology department and to premedicate patients receiving emergency angiograms, such as the plaintiff's decedent, with three milligrams of morphine sulfate intravenously in the neuroradiology department.

After the plaintiff's decedent was given three milligrams of morphine in the neuroradiology department, his blood pressure and pulse rate dropped. An injection of atropine brought his blood pressure back up, and after a one-hour delay, the defendant performed the angiogram. The angiogram revealed a small ulcerated plaque on the inside wall of the artery but no blockage of the artery. The plaintiff's decedent suffered permanent paralysis on his right side and blindness in the right half of both eyes which he attributed to the morphine sulfate administered to him.

The plaintiff's experts testified that the defendant deviated from the standard of care of the average qualified neuroradiologist in administering morphine as a premedication because of its potency and potential side effects and in performing an angiogram that was not necessary under the circumstances.

The defendant's experts testified that it was common practice to premedicate angiogram patients with morphine sulfate to relax them, to make them more comfortable, and to enable them to remain still while the X-ray was taken and that the defendant's procedures conformed to the degree of care and skill of the average qualified neuroradiologist.

The defendant also presented the testimony of Barbara Lowe, a nurse who worked in MGH's neuroradiology department for approximately nine years prior to 1981. Nurse Lowe testified that the practice at MGH was to premedicate nonemergency angiogram patients with five milligrams of

morphine intramuscularly before they came to the depart-
ment and to premedicate emergency angiogram patients in
the neuroradiology department with three milligrams of mor-
phine sulfate intravenously. It is the admission of this testi-
mony that the plaintiff contends amounted to prejudicial
error.

We now address this claim of error.

1. *Failure to supplement answers to interrogatories.* The
plaintiff asserts that, because Nurse Lowe was an expert wit-
ness, she was entitled to be notified of the subject matter of
Nurse Lowe's or the nurse's testimony before trial under
Mass.R.Civ.P. 26(b)(4)(A) and 26(e)(1)(B). The judge,
however, permitted the nurse to testify only about the routine
practice followed at MGH in administering morphine to
angiogram patients and not about the standard of care prac-
ticed by physicians. Implicit in the judge's ruling is the rec-
ognition that the nurse was not an expert witness under rule
26(b)(4)(A), for her testimony did not pertain to facts
known and opinions acquired or developed in anticipation of
litigation or for trial. See 8 Wright & Miller, Federal Prac-
tice and Procedure § 2029 (1970).

In addition, even if she were an expert witness, a trial
judge has broad discretion in deciding whether to permit ex-
pert testimony when the proponent has not given proper no-
tice of the identity of the expert or the subject matter of the
expert's anticipated testimony, either in his answers to inter-
rogatories or in his supplementary responses. See 8 Wright
& Miller, Federal Practice and Procedure § 2050 (1970).
The practice of administering morphine to angiogram pa-
tients at MGH was a subject on which plaintiff's counsel had
ample advance notice, given the testimony of both plaintiff's
and defendant's medical experts on this issue. See *Slate* v.
*Bethlehem Steel Corp.,* 22 Mass. App. Ct. 641, 651
(1986)(prejudice not found where counsel had notice that
another expert was to testify on the same issue), *S.C.,* 400
Mass. 378 (1987). The nurse's testimony was quite simplistic
and proper cross-examination would not likely have required
any additional preparation by experienced counsel, who,

moreover, failed to request a continuance. See *Giannaros* v.
*M. S. Walker, Inc.*, 16 Mass. App. Ct. 902 (1983)(party had
opportunity to seek continuance but did not do so). In these
circumstances, there was no abuse of discretion by the trial
judge.

2. *Admissibility of routine practice testimony.* In *Brune* v.
*Belinkoff*, 354 Mass. 102, 108 (1968), the Supreme Judicial
Court abandoned the "locality rule" which permitted a phy-
sician's standard of care to be judged by the standard of care
practiced by physicians in his community or locality. In its
place, the court adopted the standard of care of the average
qualified physician practicing his or her specialty, taking into
account the advances in the profession. *Id.* at 109. By per-
mitting Nurse Lowe to testify as to the routine practice fol-
lowed by physicians at MGH in administering morphine sul-
fate to their angiogram patients, the plaintiff argues, the
court has allowed the witness to inject a standard of care
based upon the medical practice of physicians at MGH, con-
trary to the holding of *Brune* v. *Belinkoff*. In essence, the
plaintiff claims that the jury could conclude, from Nurse
Lowe's testimony regarding MGH's practice of administer-
ing morphine to emergency angiogram patients, that the
plaintiff's decedent received the average qualified medical
care required by *Brune*. While we recognize that this testi-
mony had the potential to mislead the jury, see *Simmons* v.
*Yurchak*, 28 Mass. App. Ct. 371, 378 (1990)(questions per-
taining to a lesser standard of care rightly excluded), we do
not conclude its admission was error, for the testimony was
relevant to corroborate the defendant's testimony that the
patient received only three milligrams of morphine and not
eight as the plaintiff asserted.

When the plaintiff objected to the nurse's testimony as ir-
relevant to the standard of care required of the defendant,
the defendant explained that the testimony was being offered
to corroborate the defendant's testimony as to the procedures
followed by him in performing the angiogram.[2] The judge

---

[2]In particular, on appeal, the defendant argues that the testimony was
relevant to refute the plaintiff's contention that the plaintiff's decedent had

allowed it to be admitted for this purpose. The plaintiff did not request a limiting instruction and none was given.

While evidence of a person's habit is not admissible for the purpose of proving whether an act was performed in conformity with the habit, *Davidson* v. *Massachusetts Cas. Ins. Co.*, 325 Mass. 115, 122 (1949), evidence of a business custom is admissible to show that an act was performed in conformity with the custom. *Commonwealth* v. *Carroll*, 360 Mass. 580, 587 (1971). Liacos, Massachusetts Evidence 423 (5th ed. 1981). Cf. Proposed Mass.R.Evid. 406.[3] Evidence of business custom has typically involved such routine tasks performed by businesses as mailing letters, *Meehan* v. *North Adams Sav. Bank*, 302 Mass. 357, 363 (1939), handling insurance applications received in blank, *Santarpio* v. *New York Life Ins. Co.*, 301 Mass. 207, 209 (1938), and issuing cash register receipts, *Commonwealth* v. *Torrealba*, 316 Mass. 24, 30 (1944). See Note, Evidence of Habit and Custom in Massachusetts Civil Cases, 33 B.U.L.Rev. 205 (1953). While the practice at MGH of administering morphine in particular dosages to angiogram patients may not have the same degree of invariability as these more routine business practices, it is more appropriately characterized as evidence of business custom than evidence of individual habit in that no statement was ever made as to any particular doctor's habit. See generally Annot., Propriety, in Medical Malpractice Case, of Admitting Testimony Regarding Physician's Usual Custom or Habit in Order to Establish Nonliability, 10 A.L.R.4th 1243 (1981). The judge in his discretion could determine that the probative value of this

received five milligrams of morphine in the emergency room prior to the three that the defendant admits were administered in the neuroradiology department.

[3]Proposed Mass.R.Evid. 406 reads as follows:

"(a) Admissibility. Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice, but such evidence is not admissible for the purpose of proving that a person or organization did or did not conform on a particular occasion to the prescribed standard of care."

evidence for purposes of corroborating the defendant's testimony that only three milligrams of morphine was given to plaintiff's decedent outweighed the risk of the use of this evidence for an improper purpose. Cf. Proposed Mass.R.Evid. 403. Since the plaintiff did not request a limiting instruction on the use of this testimony, she cannot now complain that the judge committed error in its admission. *Curtin* v. *Benjamin*, 305 Mass. 489, 493-494 (1940). See 1 McCormick, Evidence §§ 52, 59 (4th ed. 1992).

Even if the admission of Nurse Lowe's testimony was error, reversal would not be required as such error was harmless in the context of the entire case. A party is not entitled to a reversal and a new trial based on an error in the admission of evidence or other ruling of the trial court unless the "error complained of has injuriously affected the substantial rights of the part[y]." G. L. c. 231, § 119, inserted by St. 1973, c. 1114, § 202 (reversal). G. L. c. 231, § 132 (new trial). *Timmons* v. *Massachusetts Bay Transp. Authy.*, 412 Mass. 646, 652 (1992).

Two medical experts testified for the defendant that the use of morphine was common and that the defendant's procedures met with acceptable medical practice. The defendant himself testified, similarly to Nurse Lowe, as to MGH's standard procedures in administering morphine to angiogram patients. Arguably, Nurse Lowe's testimony was simply cumulative of other evidence. See, e.g., *Jewett* v. *Dow*, 333 Mass. 187, 190 (1955); *Palmer* v. *Palmer*, 23 Mass. App. Ct. 245, 249 (1986). Contrast *Timmons* v. *Massachusetts Bay Transp. Authy.*, *supra* at 653 (where incompetent expert testimony was the only evidence on the issue, its admission was not harmless error). Nurse Lowe, as previously observed, did not purport to testify that this practice at MGH was in accordance with acceptable medical practice. Nor did she testify as to the appropriateness of the use of morphine as compared to other drugs or to the appropriateness of performing an angiogram upon the plaintiff's decedent in the circumstances. These subjects were addressed and examined in great depth through expert medical witnesses called by both

parties. In light of the extensive expert testimony available to the jury, the added effect of her testimony was insignificant. Moreover, the risk that the testimony would be improperly relied upon was mitigated by the judge's adequate instructions on the *Brune* standard of care in a medical malpractice case.

In sum, in light of the evidence on the issue whether the defendant's care deviated from acceptable medical practice, the lack of any direct testimony by Nurse Lowe on this issue, and the judge's correct instructions as to the standard of care, we conclude that a reasonable jury would not have been improperly influenced by the admitted testimony. See *Coburn* v. *Moore*, 320 Mass. 116, 121 (1946); *Grassis* v. *Retik*, 25 Mass. App. Ct. 595, 602-603 (1988).

*Judgment affirmed.*