Todd Gordon Wilson (husband) appeals from a judgment of divorce nisi entered by the Probate and Family Court which, among other things, awarded his former wife, Kelma Meira Wilson (wife), sole legal and physical custody of the parties' minor child, along with twenty percent of his retirement account. The husband also appeals from the denial of several postjudgment motions. We affirm in part and reverse in part.
Background. The parties were married on February 1, 2013. Five days later, on February 6, 2013, the parties' daughter was born. The wife also had two children from a prior marriage, while the husband had four children from a prior marriage. On June 19, 2015, the wife and the parties' child moved out of the marital home.
On June 23, 2015, the husband, acting pro se, initiated custody proceedings in the Probate and Family Court and moved for emergency custody of the parties' child. In his emergency motion for custody, the husband alleged that he was "very concerned" about the child's well-being, because the wife was acting "unstable," was not "thinking clearly," and was not "of sound mind." Following an ex parte hearing on June 23, 2015, a judge (motion judge) allowed the husband's emergency motion, granting him temporary sole legal and physical custody of the child and scheduling a second hearing for July 2, 2015.
On the following day, June 24, 2015, the Probate and Family Court docketed the wife's pro se complaint for divorce, which was dated June 22, 2015. In the complaint for divorce, the wife requested custody of the parties' child, and alleged that the husband "ha[d] been mentally and verbally abusive" to her.
On July 2, 2015, the husband, now represented by counsel, appeared before a different judge (divorce judge) for a second hearing on his emergency motion for custody. The wife was not present at the July 2, 2015, hearing. On the same day, the divorce judge issued a temporary order leaving the June 23, 2015, order in effect.
On July 6, 2015, the wife filed a pro se motion seeking temporary custody of the parties' child. On July 27, 2015, now represented by counsel as well, the wife filed a motion seeking to vacate the temporary orders entered on June 23 and July 2, 2015. The wife stated that she was not aware of the hearing scheduled for July 2, 2015, as the notice was sent to the marital home where the husband was residing, and the husband had failed to inform her of the hearing. On August 6, 2015, following a hearing attended by both parties and their respective attorneys, the divorce judge entered a further temporary order approving a stipulation of the parties that granted the wife parenting time with the child every other weekend.
On December 3, 2015, the wife filed a motion for temporary orders, requesting a "more equitable parenting schedule." On January 11, 2016, a different judge (second motion judge) entered a temporary order leaving the stipulated parenting schedule intact, while granting the wife shared legal custody of the child and ordering her to pay weekly child support to the husband of $150.[2]
On June 20, 2016, a trial was held before the divorce judge, at which both parties were present and represented by counsel. Both parties and the wife's first husband testified at the trial. On July 12, 2016, the Probate and Family Court entered a judgment of divorce nisi,[3] granting the wife sole legal and physical custody of the parties' child, and ordering the husband to pay weekly child support to the wife of $178. The judgment of divorce further required the husband to transfer to the wife twenty percent of the balance of his Fidelity individual retirement account (IRA).
On July 22, 2016, the husband filed a five-page motion for new trial pursuant to Mass.Dom.Rel.P. 59.[4] The motion was accompanied by several exhibits containing affidavits and letters from various individuals, including the husband's first wife, several of the husband's immediate family members, and the husband's attorney, along with a letter from a psychotherapist who had provided couple's counseling to the parties, and individual counseling to the husband. The Probate and Family Court returned the exhibits to the husband's counsel, along with a notice indicating that the motion for new trial had been submitted to the divorce judge for consideration. The notice explained that the exhibits were being returned as they contained "confidential information of one or both parties which the Court is required to protect" and further directed the husband's counsel to "refer to Standing Order 2-99 regarding the procedure for filing a post-judgment motion and the limitation of five (5) pages." On August 24, 2016, the divorce judge denied the husband's motion for new trial. On September 7, 2016, the husband filed a motion for reconsideration, and on September 15, 2016, a motion to restore the exhibits removed from the file. Following a hearing on September 15, 2016, the divorce judge denied both motions. The present appeal followed.
Discussion. The husband challenges (1) the award of sole legal and physical custody to the wife, (2) the assignment of twenty percent of his Fidelity IRA to the wife, and (3) the denial of his postjudgment motions. We address the husband's arguments in turn.
1. Custody. The husband argues that it was an abuse of discretion[5] to award sole legal and physical custody to the wife, as the evidence at trial did not provide an "adequate basis ... to sharply alter the custody arrangement which had been in place since the inception of the case." We disagree.
"In custody matters, the touchstone inquiry [is] ... what is 'best for the child.' " Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting from Custody of Kali, 439 Mass. 834, 840 (2003). See G. L. c. 208, § 28. "The determination of which parent will promote a child's best interests rests within the discretion of the judge ... [whose] findings ... must stand unless they are plainly wrong." Hunter, supra, quoting from Custody of Kali, supra at 845.
In the present case, the judge permissibly considered several factors when deciding to award sole custody to the wife. The judge found that the husband's emergency motion for custody "was advanced in bad faith ... in an attempt to gain unfair advantage in this legal proceeding," "to exclude the [w]ife from [the child's] life," and to "interfere[ ] in [the wife's] relationship with [the child]." See Schechter v. Schechter, 88 Mass. App. Ct. 239, 248 (2015). The judge also found that the [w]ife had left the marital home with [the child] to separate herself from an emotionally and physically abusive relationship with the [h]usband." See G. L. c. 208, § 31A. The judge further found that the husband had demonstrated an inability "to appropriately provide for [the child's] day-to-day care or personal hygiene," whereas the wife was "more capable" of "primarily provid[ing] for [the child's] day-to-day needs." See G. L. c. 208, § 31. Finally, the judge found that the husband's "actions demonstrate that he does not have the present ability and/or willingness to co-parent with the [w]ife," and that the wife "is more capable" than the husband of "includ[ing] the other parent in [the child's] life despite their difficult history, conflict and abuse." Compare Hunter v. Rose, 463 Mass. at 497.
The husband contends that there "was no basis in the record" for the judge's findings regarding custody. The marriage was a short-term, two-year marriage. The judge permissibly found that the wife had been the primary caretaker of the parties' child as well as the husband's and wife's other children by previous marriages for much of that time.[6] The judge's remaining findings were based largely on her assessment of each party's credibility. She made detailed findings regarding the husband's physical and emotional abuse of the wife.[7] She further found that the husband sought and obtained the initial emergency custody order as a result of intentional misrepresentations to the court, and credited the wife's testimony that he failed to take adequate steps to ensure the physical hygiene of the child. As there is nothing in the record which would leave us "convinced" that the judge's credibility determinations were "plainly wrong," we decline to disturb them. Zaleski v. Zaleski, 469 Mass. 230, 237 (2014), quoting from Felton v. Felton, 383 Mass. 232, 239 (1981).
The husband next contends that the judge overlooked the potential harm to the child resulting from a substantial change in the existing custody arrangement. See Custody of Kali, 439 Mass. at 843 ("[I]t is ordinarily in the child's best interests to maintain" the existing parenting arrangement if it "is satisfactory and is reasonably capable of preservation"). We disagree. Where, as here, "[t]he temporary custody order entered at the beginning of this action significantly altered [the child's] living arrangements and the parties' parental responsibilities, ... the benefits of stability and continuity that should have been a major focus of the judge's analysis were eviscerated" by the temporary custody order. Id. at 845-846. The wife was the child's primary caretaker during the marriage, a role that was effectively destroyed by the husband's "bad faith" commencement of custody proceedings. Moreover, the judge was cognizant of the need to avoid further disruption in the child's life, as she specifically noted that the husband's "parenting time will allow him to maintain his relationship with [the child] ... as the Court finds this would be in [the child's] best interests."
We are similarly unpersuaded by the husband's claim that he was prejudiced by the abuse allegations raised at trial. The husband was sufficiently on notice of the abuse allegations prior to the trial on June 20, 2016, as they were raised by the wife in her complaint for divorce filed on June 24, 2015, and during a hearing held on December 10, 2015. Moreover, the wife's counsel indicated in his opening statement that the wife would testify as to incidents of abuse. At no time did the husband's counsel object and request a continuance, despite having an opportunity to do so. See Elias v. Suran, 35 Mass. App. Ct. 7, 10-11 (1993).
Finally, we disagree with the husband's contention that, notwithstanding the physical custody determination, there was no basis in the record for the judge to eliminate shared legal custody. 'Joint custody is synonymous with joint decision making and a common desire to promote the children's best interest. ' Rolde v. Rolde, 12 Mass. App. Ct. 398, 404 (1981). '[I]n order for joint custody or shared responsibility to work, both parents must be able mutually to agree on the basic issues in child rearing and want to cooperate in making decisions for [their] children.' Ibid. (quotation omitted). Cf. Carr v. Carr, 44 Mass. App. Ct. 924, 925 (1998) ; Custody of Odette, 61 Mass. App. Ct. 904, 905 (2004). (quotation omitted). Here, the judge found that the husband's "communications to the [w]ife have been hurtful, demeaning and threatening on occasion."[8] The judge found that while "the [w]ife has tried to work with the [h]usband regarding [the child's] care and parenting time," the husband has not demonstrated an ability to "join in decision-making with the [w]ife as to matters involving [the child's] medical care and education." Accordingly, the judge was well within her discretion to grant sole legal custody to the mother. See Rolde v. Rolde, supra at 404-406 .
2. Property division. The husband contends that it was improper to award the wife twenty percent of his IRA, where the parties were only married for two years and the entirety of the IRA funds were acquired by the husband prior to the marriage. We disagree.
A judge may "assign to one spouse property of the other spouse whenever and however acquired." Rice v. Rice, 372 Mass. 398, 400 (1977). "Once the judge decides to include premarital assets as part of the [marital] estate, [s]he has considerable discretion in determining how to divide the assets equitably." Baccanti v. Morton, 434 Mass. 787, 792 (2001).
"In reviewing a judge's decision under G. L. c. 208, § 34, we use a two-step analysis." deCastro v. deCastro, 415 Mass. 787, 791-792 (1993). "We first determine whether the judge considered all the § 34 factors, and no others .... We then evaluate whether the conclusions follow from the findings and rulings." Id. at 792. "A division of marital property which is supported by findings as to the required factors will not be disturbed on appeal unless 'plainly wrong and excessive.' " Passemato v. Passemato, 427 Mass. 52, 57 (1998), quoting from Heins v. Ledis, 422 Mass. 477, 481 (1996).
Here, the judge referenced the § 34 factors and the evidence at trial, from which we infer[9] that she considered the parties' respective contributions to the marital enterprise, and each party's ability to obtain future income and assets. See G. L. c. 208, § 34. Notwithstanding the husband's unemployment at the time of trial, it is apparent from the judge's findings that she viewed the husband's opportunity to acquire future income and assets to be superior to that of the wife.[10] Moreover, it is apparent that the judge took into account the wife's contribution as primary caretaker to the seven children living in the marital home, which enabled the husband to travel frequently for work. See Moriarty v. Stone, 41 Mass. App. Ct. 151, 157 (1996) ("The parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate"). Accordingly, we cannot say that the assignment of twenty percent of the husband's IRA to the wife was "plainly wrong and excessive." Heins v. Ledis, 422 Mass. at 481. Passemato v. Passemato, 427 Mass. at 57.
3. The postjudgment motions. The husband contends that the divorce judge abused her discretion by denying his motion for new trial (and subsequent motion for reconsideration) without considering the affidavits that were "improperly removed" from the motion. The husband asserts that because the information contained in the affidavits "contradicted" the judge's findings concerning custody, the judge was obligated to consider whether the newly proffered evidence would have altered the outcome of the custody decision.
Although we agree with the husband, as discussed below, that two of the affidavits should have been restored to the docket, the failure to do so was not prejudicial. The information contained in the affidavits was summarized in the motion. The husband has failed to "demonstrate that the evidence presented in his motion for a new trial was newly discovered." Wojcicki v. Caragher, 447 Mass. 200, 213 (2006). See ibid. ("Evidence is considered newly discovered in this context only if it was unknown and unavailable at the time of trial despite the diligence of the moving party" [quotation omitted] ). To the extent that the husband appears to argue that he was deprived of an opportunity to offer the evidence contained in the affidavits because he was blindsided by the wife's abuse allegations at trial, we remain unpersuaded by the husband's claim of surprise, especially where his counsel failed to request a continuance. See Elias v. Suran, 35 Mass. App. Ct. at 10-11. Accordingly, we discern no abuse of discretion in the denial of the husband's postjudgment motion for a new trial. See Wojcicki v. Caragher, supra at 209.
The motion to restore the affidavits to the docket presents a different issue. The affidavits were returned to the husband for two reasons-they exceeded the five-page limit on a motion under Probate and Family Court Standing Order 2-99, and one of the affidavits contained confidential information. The husband's motion, which was five pages in length and was accepted for filing, was a motion to alter or amend the judgment, or order a new trial pursuant to Mass.R.Dom.Rel.P. 59(e). Rule 59(c) provides that the moving party may file affidavits with the motion. The two affidavits that did not contain confidential information were properly filed, and it was error to refuse to restore them to the docket. However, because the motion summarized the affidavits, and the judge considered the information in deciding whether to grant a further evidentiary hearing, the error was not prejudicial.
Fees. The wife's request for double costs and attorney's fees is denied.
Conclusion. The judgment of divorce nisi, dated June 22, 2016, is affirmed. The order dated August 24, 2016, denying the husband's motion to alter or amend the judgment or for a new trial is affirmed, as is the order dated September 15, 2016, denying the husband's motion for reconsideration. As to the order dated September 15, 2016, denying the husband's motion to restore documents improperly removed from the file, so much of the order as pertains to the two affidavits that did not contain confidential information is reversed; in all other respects, the order is affirmed.[11]
So ordered.
Judgment affirmed; orders denying motion to alter or amend judgment or for new trial and motion for reconsideration affirmed; order denying motion to restore documents reversed in part.

The second motion judge also consolidated the custody and divorce actions, and dismissed the husband's complaint for custody.

The judgment of divorce was dated June 22, 2016, but was not docketed until July 12, 2016.

While the husband's motion was styled as one "pursuant to Mass.Dom.Rel.P. 59 and Mass.Dom.Rel.P. 62 to alter or amend judgment or order a new trial and to stay the judgment," the relief ultimately sought by the husband was a "further evidentiary hearing."

We review custody determinations for an abuse of discretion. Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015). See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The judge found that, during the marriage, the husband traveled frequently for work. As a result, the wife was, for the most part, "solely responsible for the care of seven ... children" (the husband's four children from his previous marriage, the wife's two children from her previous marriage, and the parties' child). The judge found that the wife was responsible for the "vast majority of the child care."

The husband contends that the judge failed to support the findings of abuse, and thus the award of custody, with the detailed factual findings required by G. L. c. 208, § 31A. See generally Custody of Vaughn, 422 Mass. 590, 599-600 (1996). The judge made detailed subsidiary findings regarding the abuse. The judge specifically found that "[t]he [w]ife testified credibly that the [h]usband had been verbally abusive and controlling of her actions throughout most of the marriage. On one occasion, when [the child] was approximately one (1) year old, the [w]ife locked herself in the bathroom with [the child] to avoid the [h]usband's verbal abuse and the [h]usband kicked the bathroom door in. The [w]ife testified credibly that approximately two (2) years ago, during the wintertime, the [h]usband choked [her] with a scarf until she passed out. ... The [w]ife testified credibly that in 2013, the [h]usband threatened the [w]ife that it would be very easy to have her disappear by burying her in the back yard."
The judge did not make the explicit findings concerning a pattern or serious incident of abuse, or the impact of a pattern or serious incident of abuse on the child contemplated by G. L. c. 208, § 31A. However, the judge did not base her custody award on the impact of domestic violence on the child. Rather, she found that the husband's disrespect for and abusive treatment of the wife rendered him unable to coparent the child. While the § 31A findings should have been made, the judge's other findings and ultimate conclusion concerning custody were fully supported by the evidence.

The judge found that, during the pendency of the litigation, the husband engaged in "inappropriate and troublesome" actions toward the wife, including sending her taunting text messages and photos of his romantic partners designed "to cause the [w]ife emotional upset."

We consider the rationale implicit in the judge's findings. However, it would be preferable were the judge to state explicitly, however briefly, the rationale for the division of property pursuant to § 34.

The judge found that the wife presently resides with her own parents because she "is, and has been, without any financial means to establish her own residence." In contrast, the judge found that the husband resides in a duplex which he co-owns with his father. The judge also found that, prior to being laid off by General Dynamics in May of 2016, the husband was employed by Carosel Industries for ten years.

To the extent that we do not address the husband's other contentions, "they 'have not been overlooked. We find nothing in them that requires discussion.' " Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting from Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).