NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-523

MICHAEL GERHARDT & another[1]

vs.

ROBERT S. BURR & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Michael Gerhardt and Lauren Seaverns, worked for a real estate development company called College Street Partners LLC, which was owned and managed by the defendant, Robert Burr.  In 2009, Burr entered into written "participation agreements" with Gerhardt and Seaverns that gave them economic interests in a construction project referred to as "140 Commonwealth Avenue-Danvers," which they helped to develop. In 2011, Burr entered into participation agreements with Gerhardt and Seaverns that gave them economic interests in

---

[1] Lauren Seaverns.

[2] College Street Partners LLC; 140 Commonwealth Avenue-Danvers, LLC; and Hawthorne Hill Development LLC.

another construction project, "Hawthorne Hill."  Gerhardt and Seaverns left their employment with College Street Partners in 2013, and Burr stopped making distributions to them under the participation agreements shortly thereafter.

In 2021, the plaintiffs filed suit in Superior Court against Burr, College Street Partners, and two other limited liability companies associated with the two construction projects.  After the parties cross-moved for summary judgment, a judge allowed the plaintiffs' motion for partial summary judgment as to Burr's liability for breach of contract.[3]  The judge concluded that "it is undisputed that Burr stopped distributing profits to Gerhardt and Seaverns once their employment with College Street Partners ended in 2013, Burr's contractual obligation did not end when Gerhardt and Seaverns stopped working for College Street, and this claim is not barred by waiver or estoppel."  The matter proceeded to a bench trial on damages.  In his written findings and conclusions, the judge ordered Burr to pay (1) Gerhardt $1,030,744 in damages plus prejudgment interest, and (2) Seaverns $575,758 in damages plus prejudgment interest.  The judge denied Burr's "emergency

---

[3] In the event that the judge awarded them partial summary judgment on their claim for breach of contract, the plaintiffs waived their claims for breach of a contract formed by reasonable reliance, quantum meruit, or unjust enrichment.  The judge dismissed defendant College Street Partners' counterclaims against Gerhardt.

motion" for reconsideration of the judge's summary judgment ruling.

On appeal, Burr[4] contends that the plaintiffs' action should have been dismissed as time-barred under the six-year statute of limitations for contract claims.  He contends that the judge erred in granting partial summary judgment as to liability because Burr's testimony established his estoppel and waiver defenses and the judge purportedly "ignored" Burr's laches defense.  Burr also contends that, at the damages trial, the judge misapplied the parol evidence rule, excluded key evidence about reliance, and miscalculated the plaintiffs' damages and prejudgment interest.  Lastly, Burr claims that the judge erred by declining to reconsider his summary judgment decision.  We affirm the judge's decisions in all respects.

Discussion.  1.  Partial summary judgment.  a.  Standard of review.  "We review a decision on a motion for summary judgment de novo."  Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021) (Pesa).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Barbetti v. Stempniewicz, 490 Mass. 98, 107 (2022), quoting Pesa, supra.  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

---

[4] Because no recovery was awarded against the three defendant companies, we refer to the appellants as "Burr."

b.  Statute of limitations.  Burr stopped making distributions to Gerhardt and Seaverns for the two projects in 2013.  The plaintiffs filed suit in 2021.  General Laws c. 260, § 1, provides that the statute of limitations for "[a]ctions upon contracts under seal" is twenty years.  General Laws c. 260, § 2, provides that the statute of limitations for most contract actions not "limited by section one" is six years.  In his summary judgment decision, the judge concluded that, because the participation agreements are sealed instruments, the twenty-year limitations period in G. L. c. 260, § 1, applies, and the plaintiffs' action is not time-barred.

Massachusetts is "one of the minority of American jurisdictions that have carried over significant elements of the sealed contract doctrine to the Twenty-first Century."  Knott v. Racicot, 442 Mass. 314, 320 (2004).  Although some aspects of the sealed contract doctrine have "eroded" in the Commonwealth, id., quoting Nalbandian v. Hanson Restaurant & Lounge, Inc., 369 Mass. 150, 155 (1975), the twenty-year statute of limitations continues to apply to "[a]ctions upon contracts under seal." G. L. c. 260, § 1.  See, e.g., Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 469, 474 (2013); JB Mtge. Co. v. Ring, 90 Mass. App. Ct. 93, 95 (2016).

Burr contends that the participation agreements are not "contracts under seal" because they do not say so in the

"Recitals" section of the agreements. We disagree. Each of the agreements states that it is "EXECUTED under seal," directly above the parties' signatures. That statement gives each agreement the legal effect of a sealed instrument under G. L. c. 4, § 9A. See Nalbandian, 369 Mass. at 151 n.2; Lawrence H. Oppenheim Co. v. Bloom, 325 Mass. 301, 302 (1950); Glendale Coal Co. v. Nesson, 312 Mass. 293, 294 (1942). See also Knott, 442 Mass. at 319-320, citing G. L. c. 4, § 9A ("Over time, simply the words 'under seal' or a similar phrase appearing in a mass-produced, form contract became sufficient to invest that document with the privileged status of a sealed instrument"). There is no requirement that the words "under seal" appear in a section titled "Recitals." In Glendale Coal Co., supra, the Supreme Judicial Court stated that the words "Witness hand and seal" before the plaintiff's signature gave his release "the legal effect of a sealed instrument." In Boston v. Roxbury Action Program, Inc., 68 Mass. App. Ct. 468, 473 n.10 (2007), we held that the defendant company's statement, just above its agent's signature, that it "caused this instrument to be signed and sealed in its name" sufficed "to create a sealed instrument."

Nor are we persuaded by Burr's argument that the participation agreements are not sealed instruments because the page marked "Schedule A" in each agreement does not also state

5

that the agreement is "under seal."  As discussed, the governing statute as construed by the case law requires only a single statement that an instrument is sealed or executed under seal in order to give it "the legal effect of a sealed instrument." G. L. c. 4, § 9A.  See Nalbandian, 369 Mass. at 155.  This phrase does not need to be repeated each time the parties manifest their acceptance of the contract's terms through their signatures or initials.  Further, as the judge ruled, each Schedule A is part of the participation agreement and has no independent meaning or legal effect.  Accordingly, the schedules are not themselves "instruments" to be analyzed separately from the rest of the participation agreements for the purpose of determining whether the twenty-year statute of limitations under G. L. c. 260, § 1, applies.  See G. L. c. 4, § 9A.

c.  Estoppel, waiver, and laches.  The judge concluded that, because the participation agreements are unambiguous when considered as a whole, their meanings are a question of law that he could decide at summary judgment.  He ruled that, under the agreements' plain language, the plaintiffs' rights to economic interests in the construction projects continued after they stopped working for College Street Partners.  Burr therefore had a continuing obligation to pay them a percentage of the cash distributions that he paid himself from these projects, and each

6

of his failures to pay their shares of the distributions was a breach of the agreements.

In opposing the plaintiffs' summary judgment motion, Burr argued that the participation agreements are ambiguous and, therefore, the judge should consider extrinsic evidence purportedly showing that "the parties never intended the Participation Agreements to continue beyond termination of Plaintiffs' employment and the end of College Street." That extrinsic evidence was primarily Burr's own testimony, that (1) "at the inception of the Participation Agreements, he and the Plaintiffs discussed the fact that the benefits under those Agreements would not continue post-employment," and (2) "[t]he parties' conversations in anticipation of College Street closing down also confirm that they all understood that Plaintiffs would not continue to be paid." Having concluded that the participation agreements are unambiguous and fully integrated, the judge ruled that this extrinsic evidence regarding the parties' intentions could not be considered in determining the meaning of the agreements. See General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835-836 (2007); Eastern Holding Corp. v. Congress Fin. Corp. (New England), 74 Mass. App. Ct. 737, 741-742 (2009). Burr does not directly challenge that ruling on appeal.

7

Instead, Burr argues that summary judgment in favor of the plaintiffs was improper because there were disputed issues of fact regarding his estoppel, waiver, and laches defenses.  These arguments rely primarily on the same testimony that Burr sought to introduce as extrinsic evidence of the parties' intentions.  We consider each defense in turn.

The judge correctly ruled that summary judgment in the plaintiffs' favor was not precluded by Burr's claim that the plaintiffs are equitably estopped from enforcing their rights under the participation agreements.  The principle of equitable estoppel functions "to prevent one from benefitting from his own wrongdoing and to avoid injustice."  Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 426 (2008), quoting Harrington v. Fall River Hous. Auth., 27 Mass. App. Ct. 301, 307 (1989).  To establish estoppel as a defense, a party must show

> "(1) '[a] representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made'; (2) '[a]n act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made'; and (3) '[d]etriment to [the reliant] person as a consequence of the act or omission.'"  (Emphasis omitted.)

Renovator's Supply, Inc., supra at 426-427, quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992).  Burr contends that his deposition testimony established that, at a "wind down farewell luncheon" in 2013 as College Street

8

Partners was about to close, the plaintiffs confirmed their "understanding that [their] end of employment also meant [the] end of participation distributions." Asked how the plaintiffs confirmed this understanding, Burr testified that "it would have gone something like we're going to have to go find another job because we're not going to get any more Participation Agreements because College Street is no longer our employer."[5] Even viewed in the light most favorable to Burr, this testimony fails to create a genuine dispute that the plaintiffs made a "misrepresentation of past or present facts" suggesting that Burr's interpretation of the participation agreements was the correct one, Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 542 n.17 (1992), or that they did so with the "inten[t] to induce a course of conduct" by Burr, Renovator's Supply, Inc., supra at 426, quoting Turnpike Motors, Inc. 413 Mass. at 123. Nor would Burr's reliance on such a representation have been reasonable, since he was a signatory to the participation agreements and, as the judge found, the plain

_____

[5] The plaintiffs provided different accounts of this lunch conversation in their deposition testimony. For example, Gerhardt testified that Burr told him that "[Burr's] interpretation of the agreements is that they required [Gerhardt's] ongoing employment," and Gerhardt remembered "objecting to this and saying that was not how the agreement was written." Because the judge entered summary judgment in the plaintiffs' favor, we consider the record in the light most favorable to Burr. See, e.g., Gattineri v. Wynn MA, LLC, 493 Mass. 13, 15 (2023).

9

language of the agreements provided that the plaintiffs' rights to interests in the construction projects continued after they left College Street Partners.  See Thibbitts v. Crowley, 405 Mass. 222, 229 (1989), quoting Schiller v. Metropolitan Life Ins. Co., 295 Mass. 169, 175 (1936) ("A party who has knowledge of the facts cannot rely upon estoppel because he has not been misled to his harm").  It is immaterial whether Burr misunderstood the contract's terms, since "[o]ne who signs a writing that is designed to serve as a legal document . . . is presumed to know its contents."  Hull v. Attleboro Sav. Bank, 33 Mass. App. Ct. 18, 24 (1992).  See Haufler v. Zotos, 446 Mass. 489, 501 (2006), quoting Wilkisius v. Sheehan, 258 Mass. 240, 243 (1927) ("The general rule is, that, in the absence of fraud, one who signs a written agreement is bound by its terms whether he reads and understands it or not").

The judge also correctly rejected Burr's waiver defense. "Under the common law of contracts, waiver is the 'intentional relinquishment of a known right.'"  BourgeoisWhite, LLP v. Sterling Lion, LLC, 91 Mass. App. Ct. 114, 119 (2017), quoting Dynamic Mach. Works, Inc. v. Machine & Elec. Consultants, Inc., 444 Mass. 768, 771 (2005).  Waiver may be an "express and affirmative act" or "inferred by a party's conduct," as long as that conduct is "consistent with and indicative of an intent to relinquish voluntarily a particular right" and "no other

10

reasonable explanation of [the] conduct is possible" (quotation and citation omitted). KACT, Inc. v. Rubin, 62 Mass. App. Ct. 689, 695 (2004). Where waiver is not explicit, one must show proof of "clear, decisive and unequivocal conduct" indicating an intent to waive the terms of the parties' contract. Id., quoting Glynn v. Gloucester, 9 Mass. App. Ct. 454, 462 (1980). Burr contends that he had a valid waiver defense based not only on the plaintiffs' failure to promptly file suit after he stopped making distributions to them in 2013, but also on his testimony about what they said at the farewell luncheon. In neither case, however, was the evidence sufficient to create a disputed issue of material fact precluding summary judgment on the plaintiffs' claim for breach of contract. As the judge explained, a party's failure to immediately exercise its contractual rights does not constitute a waiver of the counterparty's breach of contract. Dana v. Wildey Sav. Bank, 294 Mass. 462, 467 (1936). Similarly, the plaintiffs' purported statements at the luncheon are insufficient to allow a reasonable fact finder to infer the "intentional relinquishment of a known right." See Dynamic Mach. Works, Inc., supra, quoting Doujotos v. Leventhal, 271 Mass. 280, 282 (1930).

As for laches, although Burr criticizes the judge for "ignoring" this defense, Burr did not discuss laches at all in his opposition to the plaintiffs' summary judgment motion and

11

mentioned the doctrine only briefly, with no citation to authority, in a footnote in the memorandum supporting his cross motion. "An issue not raised or argued below may not be argued for the first time on appeal." Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), quoting Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989). For the same reason, we decline to address Burr's contention, neither raised below nor developed in his briefs here, that his deposition testimony showed an "agreement" that the plaintiffs "were not entitled to further distributions." See Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011); Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 6 n.4 (1996); Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

2. Evidentiary rulings at the damages trial. Burr contends that the judge erred in excluding "key evidence of [Burr's] affirmative defenses at trial." We review a trial judge's evidentiary rulings for an abuse of discretion, see Commonwealth v. Kozubal, 488 Mass. 575, 589 (2021), cert. denied, 142 S. Ct. 2723 (2022), and, if we find error, we reverse only if that "error has injuriously affected the substantial rights of the parties." David v. Kelly, 100 Mass. App. Ct. 443, 451 (2021), quoting Coady v. Wellfleet Marine Corp., 62 Mass. App. Ct. 237, 244 (2004).

12

Our review is hampered by Burr's failure to identify specific evidentiary rulings at trial to which he objected. Instead, Burr points to the judge's ruling in his decision on partial summary judgment, to exclude consideration of extrinsic evidence of the parties' intentions because the participation agreements are unambiguous and fully integrated. Burr argues that the judge's "wrongful" exclusion of extrinsic evidence was the basis for the judge's rejection of Burr's estoppel, waiver, and laches defenses at summary judgment, and that "the court carried that error into the damages trial." This argument fails for several reasons. First, as discussed supra, the judge rejected Burr's estoppel and waiver defenses because they were insufficient to create a genuine issue of material fact, not because of the parol evidence rule. Second, Burr did not raise a laches defense in his opposition to the plaintiffs' summary judgment motion. Third, Burr fails to cite any portion of the trial record where the judge purportedly made such an evidentiary error. A claim unsupported by citation to the record does not rise to the level of appellate argument and is waived. See Kellogg, 461 Mass. at 1003; Mass. R. A. P. 16 (a) (9).[6]

---

[6] To the extent Burr suggests that "he was not permitted to offer live testimony," that assertion is belied by his extensive testimony in the trial transcript. Burr does not identify where in the record the judge purportedly erred in limiting the scope

13

Burr also objects to the judge's ruling allowing the plaintiffs' motion to strike the second expert report of Burr's expert, Michael Goldman.  The judge excluded this report for two reasons.  First, it was served eleven months after the final deadline for disclosure of rebuttal expert opinions, and "this late disclosure unfairly prejudice[d] the Plaintiffs."  Second, the expert's new opinions "would not assist the Court in making findings as to the amount that Burr must pay to compensate Plaintiffs for breach of contract."  In particular, the judge found irrelevant the expert's opinion that, had Burr "realized that the Participation Agreements remained in effect after Burr terminated Plaintiffs' employment with College Street," he would have exercised his rights to purchase their interests "for a low price in early 2014."[7]  We discern no abuse of discretion.  A

_____

of his testimony.  In his reply brief, Burr identifies one ruling that limited his testimony, but his challenge to that ruling is waived.  See Mass. R. A. P. 16 (c) ("No new issues shall be raised in the reply brief"); Commonwealth v. Hampton, 64 Mass. App. Ct. 27, 33 n.8 (2005) ("arguments raised for the first time in a reply brief are waived").  If we did consider it, we would conclude that the judge did not abuse his discretion in sustaining the plaintiffs' objection to Burr's testimony regarding the accuracy of the calculations in the plaintiffs' supplemental expert report, particularly where the judge then allowed Burr to testify about the $2 million in estimated construction costs that he believed were not reflected in that report.

[7] The participation agreements gave Burr the right to buy out the plaintiffs within one year after their employment terminated.

judge has "broad discretion to admit or exclude 'expert testimony when the proponent has not given proper notice of . . . the subject matter of the expert's anticipated testimony.'" Kace v. Liang, 472 Mass. 630, 637 (2015), quoting Elias v. Suran, 35 Mass. App. Ct. 7, 10 (1993). In addition, an opinion based on Burr's subjective belief that the agreements terminated automatically upon termination of the plaintiffs' employment is irrelevant where, as the judge determined at summary judgment, the agreements unambiguously provide to the contrary. See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 288 & n.8 (2007) (party's subjective understanding of terms does not create ambiguity in contract).

3. Calculation of damages and prejudgment interest. Burr challenges the judge's award of damages on several grounds. "The measure of damages is a question of law reviewed de novo on appeal . . . but the amount of damages awarded is a factual issue reviewed on appeal under an abuse of discretion standard." Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 424 (2005).

First, Burr contends that the judge erred by not capping the damages at the buy-out price in 2014. This argument fails for the same reason as Burr's estoppel and waiver defenses. In short, as the judge explained, "the plain language of the Participation Agreements required Burr to keep making such

15

payments after Gerhardt and Seaverns stopped working for Burr's real estate development company," and it is "beside the point" that Burr was surprised to learn this and did not exercise his purchase rights in 2014.

Second, Burr contends that the judge erred by determining the portion of the plaintiffs' damages for the 140 Commonwealth Avenue-Danvers project based on gross proceeds, not net sale proceeds as required by the participation agreements. In calculating the damages for this project, however, the judge distinguished between the "total sales price" for the relevant units and the "net proceeds paid to Burr's entities." While Burr further argues that the judge should have deferred to his testimony regarding his calculation of net proceeds based on the amount of capital he claimed to have contributed to this project, nothing in the participation agreements required the judge to accept Burr's testimony. The judge did not abuse his discretion in determining the net proceeds based on his review of the relevant financial records, taking into consideration the analysis of Burr's capital contributions by the plaintiffs' expert witness. Although Burr asserts that his calculation of the net proceeds used "the universally accepted methodology for determining real estate sales profits," he cites no authority for this proposition and did not offer any expert testimony in support of his position at trial. See Piemonte v. New Boston

16

Garden Corp., 377 Mass. 719, 733 (1979) (in determining net asset value, "[t]he judge was not obliged to accept the [party's] evidence at face value").

Third, Burr argues that the judge erred by failing to reduce the owner distributions for the Hawthorne Hill project to account for management fees that Burr could have paid to himself, but did not. We agree with the judge that Burr's argument lacks merit. The plain language of the participation agreements requires Burr to pay the plaintiffs fixed "participation percentages" of all owner distributions that Burr, in his capacity as manager of Hawthorne Hill, decides to pay himself. It is irrelevant whether Burr understood that this contractual requirement continued after the plaintiffs stopped working for College Street Partners or that, had he understood it, he would have sought to reduce the amount he had to pay the plaintiffs by reducing the amount of owner distributions he paid to himself (by increasing the management fees charged to Hawthorne Hill). As the judge noted, it is "elementary that an unambiguous agreement must be enforced according to its terms," Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992), and here the agreements require the plaintiffs to be paid based on the owner distributions that Burr actually pays himself. Nor, as we have explained, does the evidence support Burr's

17

assertion that he relied on the plaintiffs' "agreement that they were no longer participants" in the distributions.

Fourth, the judge did not abuse his discretion in reducing from $475,000 to $200,000 the asset management fee that Burr caused Hawthorne Hill to pay South Lake Development LLC (South Lake), another company that he owned, several years after the plaintiffs filed this action. The judge found that a payment of $200,000 was reasonable compensation for the extra consulting work Burr did in connection with the threatened default of Hawthorne Hill's tenant, but that the additional $275,000 paid to South Lake was "an undeclared Ownership Distribution." We discern no clear error in this finding, given that Hawthorne Hill paid its law firm $220,000 for what Burr described as "extensive" legal work related to this same tenant dispute.

Fifth, there is no merit to Burr's claim that the plaintiffs failed to meet their evidentiary burden with respect to apportionment of the sale proceeds for the 140 Commonwealth Avenue-Danvers project. The judge credited the opinion of the plaintiffs' expert that, as of 2015, the six units owned by the project represented 34.66 percent of the market value of all units that Burr's companies owned in the building; and that, therefore, 34.66 percent of the owner distributions made by the two companies should be treated as having been made by Burr to 140 Commonwealth Avenue-Danvers. Even though Burr contends that

18

this valuation "should not have been credited" because the plaintiffs' expert was not qualified in real estate valuation, he did not offer any alternative valuation in rebuttal.

Lastly, the judge did not err in awarding prejudgment interest based on the various dates on which Burr breached the participation agreements. In relevant part, G. L. c. 231, § 6C, provides that, in a claim for breach of contract, the award of prejudgment interest runs "from the date of the breach or demand," but if the date of the breach or demand is not established, interest accrues "from the date of the commencement of the action." Establishing the date of breach or demand is a determination for the trier of fact. Aimtek, Inc. v. Norton Co., 69 Mass. App. Ct. 660, 668 (2007), citing Deerskin Trading Post, Inc. v. Spencer Press, Inc., 398 Mass. 118, 125 (1986). Here, the judge determined the dates of each of Burr's breaches of the participation agreements and ruled that "prejudgment interest shall be calculated using the dates of breaches and amounts of damages owed to each Plaintiff as of each breach date," as shown in a summary table. Because the dates of the breaches were established, the plaintiffs were entitled to interest based on those dates, not, as Burr argues, on the date they filed their complaint. See Berish v. Bornstein, 437 Mass. 252, 274-275 (2002); G. L. c. 231, § 6C.

4. _Motion for reconsideration_. In February 2025, eight months after the judge allowed the plaintiffs' motion for partial summary judgment and one week after the judge issued his written findings on damages and order for entry of judgment, and final judgment entered, Burr filed an "emergency motion" asking the judge to "reevaluate" his decision on summary judgment. In this motion, Burr asked the judge to consider a deposition errata sheet that showed corrected and additional testimony for Burr's wife, Kerri Burr, and contended that the "corrections relate to material facts that could significantly influence the foundation for the Court's decision on Mr. Burr's estoppel claim."[8] The judge declined to reconsider his decision.

_____

[8] The errata sheet sets forth "corrections" that are, at times, diametrically opposed to what Kerri Burr initially stated at her deposition. For example, when asked, "Are there any other discussions with [Gerhardt] that you recall over the years about the financial arrangement with your husband," she initially testified, "No." In her "corrected" testimony, she states, "Yes. I recall a conversation with Mr. Gerhardt at Acapulco's restaurant in 2013. Mr. Gerhardt expressed disappointment that College Street Partners was closing. I remember him saying that he was particularly disappointed that he would not be getting a 'piece' of the profits from Hawthorne Hill." For the reasons discussed herein, the errata sheet was not part of the summary judgment record considered by the judge, and we decline to consider Burr's arguments on appeal to the extent they rely on this "corrected" testimony. See Fidelity Mgt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200 (1996), quoting Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass'n, 399 Mass. 886, 889-890 n.9 (1987) ("In our review of a motion for summary judgment we are 'confined to an examination of the materials before the court at the time the rulings were made'").

20

We review the denial of a motion for reconsideration for an abuse of discretion.  See Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012).  The judge acted well within his discretion here.  As he explained, there was "no change of circumstances" warranting reconsideration of the summary judgment ruling.  See Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch. Dist., 461 Mass. 366, 368 n.4 (2012); Audubon Hill S. Condominium Ass'n, supra.  The errata sheet was dated November 2023, and Burr had it in his possession before he filed his summary judgment motion in January 2024 and his opposition to the plaintiffs' motion in February 2024.  It was therefore not "newly discovered evidence that could not be discovered through the exercise of due diligence before the original motion was filed," as required for a motion for reconsideration under rule 9D of the Rules of the Superior Court (2023).  Rather, as the judge found, Burr waived his right to present this evidence by

failing to produce it in his opposition to the plaintiffs' summary judgment motion.  See Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 312-313 (2009); Liberty Sq. Dev. Trust v. Worcester, 441 Mass. 605, 611 (2004).

Judgment affirmed.

Order denying motion for
  reconsideration affirmed.

By the Court (Henry, Shin &
  Toone, JJ.[9]),

*Paul Little*

Clerk

Entered:  April 8, 2026.

---

[9] The panelists are listed in order of seniority.

22