MCLAUGHLIN vs. DUXBURY ZONING BOARD OF APPEALS, MISC 19-000109

































 
 JOHN MCLAUGHLIN, Plaintiff, v. TOWN OF DUXBURY ZONING BOARD OF APPEALS, ET AL., Defendants
 MISC 19-000109 
 JULY 30, 2021
PLYMOUTH, ss.
SMITH, J.
DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT














 This is an appeal under M.G.L. c. 40A, §17 from the denial of a special permit by the Duxbury Zoning Board of Appeals (the "ZBA"). Before the ZBA, the Plaintiff, John McLaughlin ("McLaughlin"), sought approval for the construction of a pier in and over the salt marsh at the rear of his property that would provide him access to the Blue Fish River. The proposed pier project consisted of a 198-foot walkway, followed by a 20-foot ramp which would extend to an 8-foot by 20-foot float (the "Project"). 





 McLaughlin seeks a ruling by summary judgment that the ZBA's denial of the special permit is annulled and that the Project is approved under the Duxbury special permit zoning bylaw. As grounds for this request, McLaughlin argues that the ZBA is compelled to issue him a special permit by the legal doctrines of issue preclusion, judicial estoppel, and waiver based on the results of his previous litigation with the Duxbury Conservation Commission. For the reasons set forth in this Decision, the plaintiff's motion is DENIED. There is a material fact that is disputed; namely whether McLaughlin's Project will extend the full distance over the salt marsh on his property and terminate in an area which McLaughlin characterizes as a "tidal flat" or whether it will terminate in a portion of the salt marsh characterized in the ZBA decision as a "tidal creek." 





Background of Previous Litigation 





 McLaughlin was involved in three separate appeals of decisions made by the Duxbury Conservation Commission to deny his Project. Because McLaughlin argues that the ZBA is bound by one or all of the outcomes of those three appeals, I will briefly summarize each matter based on the summary judgment record in this case. 





 1. First Superior Court Action 





 McLaughlin's effort to obtain the necessary approvals to construct his pier began in 2010 when he filed a notice of intent with the Duxbury Conservation Commission seeking an order of conditions approving the Project under state wetlands regulations and the local Duxbury wetlands regulations. When the Conservation Commission voted to deny an order of conditions, McLaughlin appealed the decision to the Plymouth Superior Court, in Civil Action No. 2010- 000950, pursuant to M.G.L. c. 249, §4 (the "First Superior Court Action"). By a decision dated August 16, 2012, the court allowed McLaughlin's motion for judgment on the pleadings thereby vacating the Conservation Commission's denial and remanding the matter for further proceedings. Exhibit 5. In ruling as it did, the court reasoned that the Conservation Commission had acted arbitrarily when it closed the public hearing despite the fact that McLaughlin had requested a continuance to keep the hearing open so that he could submit additional materials in response to concerns about the Project raised by the Commission. The court further ruled that, to the extent that the Commission's denial of the order of conditions was based on its concerns about future problems with enforcement of any conditions it might attach to an approval, it was not based on legally tenable grounds. 





 2. Second Superior Court Action 





 In 2015, McLaughlin filed a second notice of intent with the Conservation Commission that was a revision of the plans which had been the subject of the First Superior Court Action. After an extended public hearing process, the Conservation Commission, again, denied an order of conditions for the Project. McLaughlin appealed that decision to the Plymouth Superior Court pursuant to M.G.L. c.249, §4 (the "Second Superior Court Action"). The Second Superior Court Action, referred to as Civil Action No. 2015-000821, sought a ruling that the Conservation Commission's denial of the Project was ineffective because the commission failed to issue a written decision within 21 days of the close of the public hearing as required by state wetlands regulations and the Duxbury conservation regulations. By a decision dated December 21, 2017, the court in the Second Superior Court Action agreed and ruled that the Conservation Commission's denial of an order of conditions was ineffective. Exh. 12. 





 3. The DEP Action 





 At the same time he was pursuing the Second Superior Court Action, McLaughlin also appealed the Commission's denial of the second notice of intent to the Commonwealth of Massachusetts Department of Environmental Protection ("DEP") seeking a superseding order of conditions that would approve the Project. At the conclusion of that process, the DEP issued a superseding order of conditions which approved the Project subject to conditions set by the DEP in its superseding order. Exh. 17. 





The ZBA Decision 





 Having favorably concluded the two Superior Court Actions and the DEP Action, McLaughlin filed an application with the ZBA for a special permit under the Duxbury residential pier bylaw for approval to build his pier. The Project plans submitted with his application were identical to the plans that McLaughlin had submitted with his second application to the Conservation Commission and which had been the subject of the Second Superior Court Action and the DEP superseding order of conditions. 





 The residential pier bylaw is Section 404.20, entitled "Determination of Suitability of Residential Piers," and sets forth the criteria that a residential pier must meet for the ZBA to issue a special permit. Subsection 2 of that bylaw is at issue in this case and provides as follows: 





 "The pier shall not exceed two hundred (200) feet in length and must extend the full distance over any salt marsh used to access the water's edge. The width of the pier shall not exceed four (4) feet." 





 At the public hearing before the ZBA, McLaughlin asserted that his Project satisfied Subsection 2 because it extended the full distance over the salt marsh and landed in an area that was characterized by his consultant as a "tidal flat." He also argued that the ZBA was obligated to reach the same conclusion because the decisions rendered by the Superior Court and the DEP already determined that the pier extended to the "tidal flat." 





 The ZBA also heard testimony from a wetlands consultant hired by a third party opposing the Project who opined that the pier actually terminated in an area of the salt marsh which she characterized as a "tidal creek" - not in the "tidal flat" as asserted by McLaughlin. [Note 1] At the close of the public hearing, the ZBA voted to deny a special permit, finding that McLaughlin's pier, as designed, would land in a "tidal creek" and, therefore, did not extend the full distance over the salt marsh as required by Section 404.20(2). [Note 2] This appeal ensued. 





Discussion 





 McLaughlin has framed the issue to be decided in this case as singular and narrow: Will his pier terminate in a "tidal flat," which he claims is beyond the salt marsh, or will it terminate in a "tidal creek" which the ZBA claims is a part of the salt marsh? McLaughlin asserts that the ZBA is barred from finding that the pier will terminate in a "tidal creek" because the decisions made in the two Superior Court Actions and in the DEP Action already adjudicated that issue and found in his favor. Therefore, under the legal doctrines of either issue preclusion, judicial estoppel, or waiver, the ZBA must conclude that the Project terminates beyond the salt marsh and grant him a special permit. 





 The ZBA, on the other hand, opposes summary judgment on the grounds that the ZBA cannot be bound by determinations made in the previous actions because (1) its authority to hear and decide applications for special permits under the Duxbury Zoning Bylaw is separate and distinct from the authority of the Conservation Commission to administer the state and local wetlands regulations for projects over which both local bodies have jurisdiction; and (2) neither of the doctrines of issue preclusion, judicial estoppel, or waiver apply to this appeal because the elements of each are not satisfied. 





 Issue Preclusion. Under the doctrine of issue preclusion, sometimes referred to as collateral estoppel, a party is precluded from relitigating an issue when (1) the issue has been actually litigated and determined by a valid and final judgment in a prior adjudication; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, in the prior adjudication; and (3) the issue decided in the prior adjudication was essential to the earlier judgment. Jarosz v. Palmer, 436 Mass. 526 , 530 (2002); Martin v. Ring, 401 Mass. 59 , 61 (1987); Cousineau v. Laramee, 388 Mass. 859 , 863 (1983); McLaughlin v. City of Lowell, 84 Mass. App. Ct. 45 , 56 (2013). 





 In the instant case, McLaughlin argues that his prior litigation against the Conservation Commission conclusively determined that his Project will extend over the salt marsh to a "tidal flat" and, therefore, the ZBA was precluded from "relitigating" this issue and denying the permit on the grounds that the Project will either terminate in a "tidal creek" or will not extend "the full distance over any salt marsh used to access the water's edge." This argument fails for several reasons. 





 First, the issue of whether McLaughlin's pier will extend over the salt marsh to a "tidal flat" was not actually litigated in any of the previous actions. In the First Superior Court Action, the judge described the issues that were actually litigated to be whether the Conservation Commission acted arbitrarily by refusing to allow McLaughlin's request for a continuance and whether the Conservation Commission could deny an order of conditions due to concerns about its ability to enforce conditions of any permit in the future. That decision did not "find" that the proposed pier would extend over the salt marsh and terminate in a "tidal flat" as opposed to a "tidal creek." Similarly, the determination in the Second Superior Court Action was that the Conservation Commission failed to issue its decision within 21 days of the close of the public hearing and, therefore, the decision was of no effect. That decision never reached the merits of McLaughlin's Project, including whether the Project would extend over the salt marsh to the "tidal flat." Finally, it does not appear from the summary judgment record that the DEP determined whether the Project would terminate in a "tidal flat" or a "tidal creek." The superseding order of conditions approved the Project subject to "Additional Special Conditions" that limit or condition work in or around the salt marsh and the "tidal creek." It also indicates that the resource areas to be impacted by the Project are the salt marsh, land containing shellfish, and land subject to coastal storm flowage. Exh. 17. There is no finding that the Project will terminate in the "tidal flat." [Note 3] As with the Superior Court Actions, it does not appear that the characterization of the area where the pier would end as a "tidal creek" or a "tidal flat" was actually litigated.





 Second, the ZBA and the Conservation Commission are not the same party, nor are they privies, for the purposes of issue preclusion in this case. While they are both administrative bodies within the Duxbury town government, the Conservation Commission is charged with administering the state Wetlands Protection Act and the Duxbury conservation regulations while the ZBA, on the other hand, administers the Duxbury zoning bylaw. Unless provided for under a local regulation or bylaw, neither board is bound by the decision of the other. See Stevens v. Zoning Board of Bourne, 97 Mass. App. Ct. 713 (2020). While there may be some overlap between the types of issues each must oversee in the discharge of their duties under their respective jurisdictions, each is a distinct board that applies a different set of regulatory constraints on the projects that come before it. 





 Third, even if one assumes that the issue of whether the Project would terminate in a "tidal flat" or a "tidal creek" was actually litigated in the Superior Court and DEP actions, that determination was not essential to the decisions rendered by each. Absent that, the prior litigation cannot preclude the ZBA from finding that the Project will terminate in a "tidal creek." 





 For these reasons, the ZBA is not bound by the decisions in the previous matters. McLaughlin has not demonstrated that the prior litigation determined that the Project will extend over the salt marsh and terminate in a "tidal flat" or that the doctrine of issue preclusion justifies the entry of summary judgment in his favor. 





 Judicial Estoppel. Alternatively, McLaughlin claims that the doctrine of judicial estoppel precludes the ZBA from finding that the Project will terminate in the "tidal creek" because the Conservation Commission "argued" in the First Superior Court Action that the Project terminated in the "tidal flat." 





 "Judicial estoppel bars a party from asserting a position directly inconsistent with, meaning mutually exclusive of, the position asserted in a prior proceeding." Bay State Gas Co. v. Department of Pub. Utils., 459 Mass. 807 , 818 (2011); see also Blanchette v. School Comm. of Westwood, 427 Mass. 176 , 184 (1998); Otis v. Arbella Mut. Ins. Co., 443 Mass. 634 , 640-641 (2005). Its purpose is to prevent litigants from manipulating the judicial process in a way that courts should not tolerate. Otis, 443 Mass. at 640. As an equitable doctrine, its application is a matter of discretion for the trial court. Id. Cases in which judicial estoppel has been applied have included two fundamental findings. One, the position asserted by a party in the current litigation is directly inconsistent with a position he or she asserted in a prior proceeding. Id. at 640-641. Two, the party was successful in the prior proceeding in convincing the court to accept its prior position. Id. 





 In McLaughlin's case, he asserts that the Conservation Commission argued in one or more of the previous actions that the Project would land in the "tidal flat" and, therefore, the ZBA is precluded, as a matter of law, from making its own determination that the Project does not extend over the salt marsh or that it ends in the "tidal creek." The doctrine of judicial estoppel does not extend that far. 





 As a starting point, the Conservation Commission and the ZBA are not identical parties for the purpose of judicial estoppel. They are separate town bodies with separate regulatory frameworks under which they make decisions. As such, the positions each may take in response to litigation are not binding on the other. 





 Furthermore, based on the summary judgment record in this case, it does not appear that the Conservation Commission ever got to a point where it actually argued to either the superior court or the DEP that the Project would extend into a "tidal flat" as opposed to a "tidal creek." Both superior court actions were certiorari appeals under Chapter 249, §6, where the scope of the court's review was limited to correcting substantial errors of law apparent on the record. See FIC Homes of Blackstone, Inc. v. Conservation Comm'n of Blackstone, 41 Mass. App. Ct. 681 , 684-685 (1996). Under such a review, the court does not take evidence, nor does it make findings of fact. See Comm'r of Revenue v. Lawrence, 379 Mass. 205 , 208-209 (1979). Even if the Conservation Commission had argued in an earlier case for a finding of "tidal flat," there is no evidence that it was successful. The same is true for the DEP's issuance of the superseding order of conditions. 





 On this record, the court will not find on summary judgment that McLaughlin is entitled to rely on the doctrine of judicial estoppel to bind the ZBA to a position taken by the Conservation Commission in previous litigation to which the ZBA was not a party. 





 Waiver. McLaughlin's final argument is that the settlement agreement he reached with the Conservation Commission and the town of Duxbury constituted a waiver of the right of the ZBA to deny the Project under the zoning bylaw. See Exhibit 19. McLaughlin's reading of that agreement is too broad in the context of this case. 





 Waiver is defined as the intentional relinquishment of a known right. Roseman v. Day, 345 Mass. 93 , (1962). A waiver may be manifested impliedly by a contracting party's words or acts or may arise from other reasonable inferences drawn from the attendant facts. Kact, Inc. v. Rubin, 62 Mass. App. Ct. 689 , 695 (2004). Implied waivers, however, require a showing that a party's conduct clearly, decisively, and unequivocally demonstrates a waiver of that party's right. Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599 , 608 (2003). 





 McLaughlin's settlement agreement purported to resolve disputed issues arising out of the Second Superior Court Action and the DEP Action as they related to the wetlands issues considered in both actions. It did not, as McLaughlin asserts, require the ZBA to accept the determinations of the DEP as reflected in the superseding order of conditions nor did it waive the ZBA's authority to make the decision under Section 404.20(2) of the zoning bylaw to deny the special permit because the Project would not extend "the full distance over any salt marsh used to access the water's edge." Indeed, the ZBA was not a party to the settlement agreement nor had McLaughlin yet filed his application with the ZBA for a special permit. There are no facts that support the conclusion that the municipal parties to the settlement agreement impliedly waived the ZBA's authority to decide whether McLaughlin's pier satisfied the residential pier bylaw. 





Conclusion 





 For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is DENIED. There are material disputes of fact that require a trial. A status conference is appropriate for the purpose of scheduling a pretrial conference and a trial. The parties should confer and notify the court of a mutually acceptable date and time during the week of August 16th for such a status conference. 





So Ordered.





FOOTNOTES
[Note 1] There is also evidence in the ZBA decision that indicates that the ZBA's peer review consultant concluded that the Project complied with Section 404.20(2) but qualified its conclusion because it "had not reviewed or confirmed the wetland delineations or wetland resource areas" on McLaughlin's plans. Exh. 23, Finding No. 24. 

[Note 2] The Duxbury Zoning Bylaw does not define a "tidal creek," a "tidal flat" or a "salt marsh." However, DEP regulations define the terms "tidal flat" and "salt marsh" at 310 CMR 10.27(2)(b) and 310 CMR 10.32(2), respectively. 

[Note 3] The letter submitted by McLaughlin's wetlands consultant, Sabatia, Inc., asserts that 310 CMR 10.32 permits construction in a salt marsh so long as the applicable wetlands values are protected by the imposition of reasonable and adequate conditions. Exh. 16. If that is the case, whether the pier will be located in a "tidal creek" or a "tidal flat" may not have been relevant to the DEP's decision to issue the superseding order of conditions. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.